IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY W. JONES, II,      Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO. 23-CV-5201 |
| SCHENETTIA EVANS, *et al*,      Defendants. | : : : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                               **JUNE   20, 2024**

      Anthony W. Jones, II, a *pro se* prisoner currently incarcerated at the Fort Dix Federal Correctional Institution, filed this civil action pursuant to the Federal Tort Claims Act ("FTCA") based on events that occurred while he was awaiting sentencing and was housed at the Federal Detention Center ("FDC") in Philadelphia. For the following reasons, the Court will dismiss the Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

      **A.    Criminal Prosecution**

      Jones and his two co-defendants were charged via a superseding indictment with conspiracy to commit, and engaging in, sex trafficking of adults and minors. *See United States v. Jones*, Crim. A. No. 18-193-3 (E.D. Pa.), at ECF No. 74. After a fourteen-day jury trial, Jones was found guilty on April 12, 2019, of three of the four counts with which he was charged. *Id.* at ECF Nos. 212, 213, 215. In September 2020, Jones's request to proceed *pro se* for the remainder

---

[1] The factual allegations set forth in this Memorandum are taken from Jones's Complaint and publicly available dockets. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim). Many of the documents in Jones's criminal proceeding have been filed under seal due to the nature of the charges.

of the criminal proceedings was granted, and Arnold C. Joseph, Esquire was appointed to act as standby counsel. *See id.* at ECF No. 357. Jones was sentenced on June 2, 2022 to a term of imprisonment of 252 months and ten years of supervised release. *See id.* at ECF Nos. 548, 549. He also was ordered to pay restitution. *Id.* Jones has appealed his conviction and sentence. *Id.* at ECF No. 544; *United States v. Jones*, No. 22-2064 (3d Cir.).

### B.     The Instant Case

Jones commenced this action on September 1, 2023, by filing a Complaint with the United States District Court for the District of New Jersey. (ECF No. 1.) By Order dated October 13, 2023, he was granted *in forma pauperis* status and the matter was ordered to be transferred to this District, as Jones brings claims against various employees of FDC for events that occurred while he was housed there during criminal proceedings within the Eastern District of Pennsylvania. (ECF No. 6.) However, the case was not transferred to this District until April 4, 2024. (ECF No. 8.)

The Complaint names as Defendants the United States, as well as five individuals employed at the FDC: (1) Schenettia Evans, Education Department Supervisor; (2) Harlie Nelson, Education Department Secretary; (3) Alisha Gallagher, Senior Institution Attorney; (4) Christopher Cole, Housing Unit Manager; and (5) Pamela Justice, Associate Warden. (Compl. at 2- 4.)[2] After the jury verdict was rendered in his criminal trial, Jones filed numerous post-trial motions, including a motion to dismiss the superseding indictment and motion for a new trial based on newly discovered evidence, each of which are relevant to the present suit. *See United States v. Jones*, Crim. A. No. 18-193-3 (E.D. Pa.), at ECF Nos. 520, 524, 529. Jones's claims primarily concern the alleged refusal of prison officials to provide copies of documents he

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

requested for the filing of these motions, and the subsequent revocation of email access through the Trust Fund Limited Inmate Computer System ("TRULINCS"). He asserts that Defendants retaliated against him due to the nature of his charges, motions he filed in his criminal trial, and grievances he submitted while at FDC.

Jones alleges that sometime "prior to the COVID-19 outbreak", he had a disagreement with Defendant Evans, leaving Jones "feeling offended by Ms. Evans' unusual demands." (Compl. at 7.) Subsequently, "in or about the winter of 2020-21," Jones requested Defendant Evans to provide him with copies of documents that he obtained through discovery in his criminal case, so that he could file a motion in that case. (*Id.*) Jones claims that Defendant Evans reviewed the material and refused to provide copies because they were not "legal" documents and Jones's name did not appear on them. (*Id.*) Defendant Evans directed Jones to request the "Unit Team" to provide copies of the material instead. (*Id.*) Jones "believed [that Defendant Evans] was giving him a hard time due to her disliking Mr. Jones as a person." (*Id.*)

In November 2021,[3] the government's motion to strike several documents filed by Jones in his criminal case was granted because Jones "fil[ed] exhibits and arguments revealing the identity of a child." (*Id.*) Jones was advised that he could refile "redacted or revised versions" of the motion to protect the identities of the individuals. (*Id.*) On April 1, 2022, after completing the revised motion, Jones requested his Unit Counselor to provide him with three copies so that he could file redacted and unredacted versions of the motion, serve a copy on the prosecution, and retain a copy for his records. (*Id.*) The motion totaled 150 pages. (*Id.*) Jones's Unit Counselor advised Jones that the Education Department would need to provide the copies due to the length of the document. (*Id.* at 7-8.)

---

[3] The Complaint inadvertently identifies the date of the Order as November 22, 2022.

On April 5, Jones requested that Defendant Evans provide him with two copies of the motion, instead of the needed three copies, because he was aware that he only had $5 in his prison account. (*Id.* at 9.) Defendant Evans reviewed the materials, indicated that it was "too much" to copy, but agreed to ask the legal department to review it in order to give her authority to copy the motion. (*Id.*) Jones reiterated to Defendant Evans that he did not want "any other person to review his motion citing both that the content of the motion was protected material and that he did not trust the legal department due to her constant communication with the U.S. Attorney's office." (*Id.*) That same day, Jones submitted a BP-8 grievance form, reporting Defendant Evans's "prejudicial treatment" of Jones, "as she never gives that type of scrutiny to any other inmates when they request legal copies." (*Id.* at 9.)

The following day, Defendant Evans advised Jones that she could provide only one copy of the motion due to insufficient funds in his account. (*Id.*) Jones contends that, in the past, he was not required to have funds sufficient to cover the full cost of the copies "up front," but was permitted to obtain the copies when requested, and the required funds would be deducted from his account when it was replenished at a later time. (*Id.*) He informed Defendant Evans that "no one ever checked my account before giving me copies." (*Id.*) After this interaction with Defendant Evans, Jones completed a second BP-8 grievance against Defendant Evans, claiming that she improperly denied him copies that were necessary for the defense of his criminal case as a *pro se* litigant. (*Id.*) Jones submitted the BP-8 to Mr. Mendek, his Unit Case Manager, who suggested that Jones alert Defendant Evans's supervisor, Defendant Justice. (*Id.*) That same day, Jones was provided with his original and one copy of the motion he previously submitted to Defendant Evans. (*Id.* at 10.) Later, Jones discovered additional funds in his commissary account and sent an email to Defendant Evans requesting the additional copy. (*Id.*) Jones also

4

filed a motion with the court to request leave to file a motion for new trial based on newly discovered evidence. (*Id.*)

The next day, Jones sent an email to Defendant Evans, again requesting the copy and reminding her that he was required to abide by a looming filing deadline. (*Id.*) On April 8, Jones informed Mr. Flanary, his Unit Counselor, that Defendant Evans had not responded to his message or provided the requested copy. (*Id.*) Jones also requested Mr. Flanary to obtain copies of another motion, the motion for a new trial. (*Id.* at 11.) Mr. Flanary agreed to provide the copies to Jones, but also informed him that he would not file the second BP-8 submitted by Jones because the two grievances covered the same subject and Jones failed to await resolution of the first before filing the second. (*Id.*)[4]

Having not received a response, Jones sent a third email to the Education Department staff on April 11 requesting copies of the motion for a new trial "citing his deadline and his status as a pro se litigant and his responsibilities on filing in compliance with 18 U.S.C. § 3509(d)." (*Id.*) Soon thereafter, Mr. Flanary provided Jones with copies of the motion for a new trial. (*Id.*)[5]

On April 12, Jones spoke with the legal department supervisor, Defendant Gallagher, regarding the copies of the motion to dismiss the superseding indictment. (*Id.*) Defendant Gallagher indicated that she had authorized the copies from the perspective that they were legal

---

[4] Jones contends that the first BP-8 pertained to Defendant Evans "showing his motion to different staff members who have no need to view it and how she was discriminating against him", while the second related to "the money rule she came up with, how he is a pro se litigant, how he is deemed unable to afford counsel by the court, and how it is illegal to base providing copies of his pleadings on having sufficient funds." (Compl. at 11.)

[5] Jones alleges that Defendant Nelson, the Education Department Secretary, reviews "request to staff" emails from inmates and relays them to the named individual staff member. (Compl. at 13.) He further alleges that Ms. Nelson, at the direction of Ms. Evans, reviews "everyone in the department's emails to micromanage everything going on in the department." (*Id.*)

materials, but that she "did not have anything to do with" the issue of insufficient funds. (*Id.*) Jones then sought the copies from Defendant Unit Manager Cole due to Defendant Evans's refusal. (*Id.*) After speaking with Defendants Gallagher and Evans, Defendant Cole informed Jones that he would not be provided copies because he did not have sufficient funds in his commissary account. (*Id.* at 12.) According to Jones, Defendant Cole "reasoned that it is not based on not having money because he would provide free copies if Mr. Jones was indigent[,] however[,] due to Mr. Jones having had money and spending it on other things such as chips and sodas on commissary that Mr. Jones had made poor decisions by not saving or spending his money on the copies." (*Id.*) Jones also spoke with Defendant Evans who again informed him that if he did not have sufficient funds in his account to cover the cost of the copies, she would only give Jones "what [he] can pay for." (*Id.*) Because he did not understand how many copies he would receive under those parameters, Jones declined the copies and requested the return of his motion. (*Id.*)

The following day, Jones was sent funds by a friend, which he used to purchase items from the commissary. (*Id.* at 14.) That morning, Defendant Evans retrieved from Jones the motion that he wished to be copied. (*Id.*) Soon thereafter, Defendant Evans returned to Jones's cell to inform him that she did not make the copies because he no longer had sufficient funds in his account due to the commissary purchases. (*Id.*) Jones expressed his frustration with Defendant Evans, reasoning that he made the commissary purchases based upon her assertion the prior day that she would not make the requested copies because the funds were not in his account. (*Id.*) Further, when discussing the copying issues with other inmates, Jones was informed by another inmate that he had received copies of trial transcripts from Defendant Evans and was not charged for the copies. (*Id.* at 15.)

On April 18, Jones was informed by his Unit Case Manager Mendek that he and Mr. Flanary were no longer permitted to provide any inmate with free copies and that "all legal copies must go [through] the Education [Department] and inmates must have sufficient funds to cover the cost of the copies prior to them being made." (*Id.* at 16.)

On April 19, Unit Case Manger Mendek provided Jones with a TRULINCS Exclusion Form, indicating that Defendant Cole had requested Jones to sign it. (*Id.*) This form notified Jones that his email privileges had been revoked. Jones informed Mr. Mendek that the revocation was improper for the following reasons:

> I pose no realistic threat to the public and how was a determination base[d] on the contents of other inmates PSRs and a[n] article in the new[s]letter from the Eastern Dist. of PA U.S. Court. I said that the information used to make the conclusion is not sufficient and I said that because I have not yet been sentenced and that the [Bureau of Prisons ("BOP")] does not even have a PSR for me the conclusion was based on speculation.

(*Id.*) Jones also noted that "I've been using the email for 3 years after my conviction and . . . I have not seen any other inmate lose their email until they were actually sentenced." (*Id.*) Jones also contends that the policy relied upon by prison officials to revoke the email privileges was rescinded and replaced in April 2015, and thus was outdated at the time it was applied to him. (*Id.* at 17.) According to Jones, the revocation of his email privileges was done to punish him and in retaliation for his actions. (*Id.* at 16.)

Jones spoke with Defendant Justice on April 19 regarding his problems obtaining copies of legal documents and requested that she review the email he previously sent to her on this topic. (*Id.* at 16.) He also questioned Defendant Justice how the email revocation determination had been made. (*Id.* at 17.) Because FDC was placed in lockdown status on April 21 when an officer was assaulted, Jones was unable to check his email account for several days and it was not until April 25 that he confirmed that the account was not accessible by him. (*Id.* at 17-18.)

7

Jones contends that the email system "is my primary means of communication with stand-by attorney in my criminal case as well as my mitigation specialist and make-shift paralegals." (*Id.* at 17.)  At the time his email access was revoked, his sentencing was scheduled for May 18, although it was later rescheduled to June 2. (*Id.* at 17, 19.)  Jones contends that "there is no pre-trial detainee that has lost their access to the TRULINCS public messaging system for the reasons cited by the defendants" and there are "currently other sex offenders waiting to be sentenced and have not been strip[p]ed of their email privileges." (*Id.* at 18.)  Jones asserts that his email privileges were revoked in retaliation for the filing of a "motion for leave and funds for photocopies" in his criminal case. (*Id.* at 16, 18.)[6]  Jones claims that as of April 28, legal copies continued to be denied to him, and he was unable to file extra copies of certain exhibits in his criminal case. (*Id.* at 18.)

According to Jones, the numerous post-trial motions he filed in his *pro se* capacity were filed in preparation for the motion to dismiss the superseding indictment, and he was inhibited from filing this motion in his preferred manner due to insufficient copies to supply the court with the required redacted and unredacted versions of the motion. (*Id.* at 13.)  Jones acknowledges that he could have filed the motion under seal, however he "feels it is very important that the public be able to view his motion highlighting the actions of the gov't in concert with the alleged victims who have abused the legal process and [who are] in line to receive substantial gov't

---

[6] Jones claims that on April 19, 2022, he received a copy of the Court's Order directing the government to respond to his Motion for Leave and for Funds for Photocopies. (Compl. at 17.) He avers that upon review of the Court's Order, "it dawned on me that it was the prosecutor who contacted the jail[,] in particular Defendant Gallagher the FDC Attorney[,] inquiring about the allegations contained in my motion." (*Id.*)  Jones seems to theorize that Defendant Gallagher informed Defendant Cole about the contents of the motion, which informed the Court that Case Manager Mendek and Mr. Flanary had given Jones free copies, and that Defendant Cole then reprimanded Case Manager Mendek for providing free legal copies to Jones. (*Id.*)

funds due to being considered victims of human trafficking." (*Id.*) He contends that the motion to dismiss the superseding indictment proves his innocence. (*Id.*)[7]

Jones further avers that throughout his tenure as standby counsel, Attorney Joseph failed to provide him with discovery materials as requested. (*Id.* at 19.) Jones also contends that, due to the actions of Defendants, the Government falsely informed the Court prior to sentencing that Jones refused to allow Attorney Joseph to provide photocopies of materials, that Jones lied in a motion requesting funds for photocopies, and that Jones spent his money on commissary rather than paying for photocopies, leaving a "false impression on the judge in Mr. Jones' criminal case." (*Id.*) He further claims that due to his inability to use the email system, he "could not efficiently relay instructions to his standby counsel to bring certain discovery to his sentencing hearing that would have mitigated his sentence." (*Id.*) Jones seeks monetary damages as relief. (*Id.* at 6.)

C.     **Prior Civil Litigation**

Jones previously commenced a civil matter based on the same factual allegations discussed above, and named the same individual Defendants. *See Jones v. Ms. Evans, et al.*, Civ. A. No. 22-1744. That case was initiated on April 28, 2022, while Jones awaited sentencing. He raised *Bivens*[8] claims for assorted constitutional violations. *See id.* Civil Action No. 22-1744 remains pending before this Court.

---

[7] This motion was denied by Order dated May 18, 2022. *See United States v. Jones*, Crim. A. No. 18-193-3 (E.D. Pa.), at ECF No. 535.

[8] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971). "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

## II.  STANDARD OF REVIEW

Because Jones has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Jones is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.  DISCUSSION

Jones raises claims against the United States and several individual BOP employees.  "[T]he United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)).  Congress, however, may choose to waive that immunity.  *Id.*  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

Jones brings his claims in the instant matter pursuant to the FTCA.  The FTCA is a limited waiver of sovereign immunity.  It authorizes suits against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Thus, the FTCA makes the United States liable to the same extent as a private party for certain torts committed by federal employees acting within the scope of their employment.  *See United States v. Orleans*, 425 U.S. 807, 813 (1976); 28 U.S.C. §§ 1346(b), 2674; *see also Brown v. United States*, 823 F. App'x 97, 101 (3d Cir. 2020) (*per curiam*) ("The FTCA permits claims to be brought against the United States for certain torts committed by federal employees, when private individuals engaging in analogous behavior would be subject to state law liability.").  The FTCA "does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court."  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 362 (3d Cir. 2001).  "The FTCA only waives sovereign immunity for torts recognized under the law of the state in which the conduct was alleged to have occurred."  *Rinaldi v. United States*, 904 F.3d 257, 272 n.15 (3d Cir. 2018); *see also Meyer*, 510 U.S. at 478 (describing state tort law as "the source of substantive liability under the FTCA").

To state a claim under the FTCA, a plaintiff must plausibly allege the following six elements of 28 U.S.C. § 1346(b):

> [1] [a claim] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the

11

> United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)) (alterations in original).

In addition to pleading these elements, a plaintiff must comply with the FTCA's jurisdictional requirements. A plaintiff must exhaust administrative remedies as a prerequisite to filing a lawsuit under the FTCA. *See* 28 U.S.C. § 2675(a). In other words, "[n]o claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) (stating that exhaustion is "jurisdictional and cannot be waived"); *Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018) (*per curiam*). A plaintiff "must plead administrative exhaustion in an FTCA case." *Guilford v. FCI Williamsburg*, No. 22-1945, 2022 WL 2192945, at *2 (E.D. Pa. June 16, 2022). Here, Jones avers that he filed an administrative claim with the Northeast Regional Office on April 20, 2023, presenting the same allegations as discussed herein. (Compl. at 21.) Jones's claim was denied on May 19, 2023, and he initiated the instant action on September 1, 2023. (*Id.* at 21, 25.)[9]

As an initial matter, each of the named individual Defendants is an improper Defendant in this action. The United States is the only proper defendant in an FTCA action. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008). As to the United States, Jones has failed to allege a plausible FTCA claim. Jones's allegations do not implicate a Pennsylvania tort cause of

---

[9] Jones attached to his Complaint a copy of the May 19, 2023 determination of the Northeast Regional Office of the Federal Bureau of Prisons. (*See* Compl. at 43.) Jones's allegations that staff at FDC Philadelphia denied him access to photocopying and retaliated against him by excluding him from the TRULINCS email system and prevented him from printing documents were denied. (*Id.*) Jones was informed that he had not "alleged a physical injury actionable under the . . .[FTCA] 28 U.S.C. §§ 1346(b)(2), 2672." (*Id.*) The determination further indicated that there was no evidence that Jones experienced a compensable loss as the result of negligence on the part of any BOP employee. (*Id.*) Jones was advised that he could bring suit within the appropriate District within six months of the date of the decision. (*Id.*)

12

action, but rather are constitutional in nature. However, "[t]he United States . . . has not rendered itself liable under [the FTCA] for constitutional tort claims." *Meyer*, 510 U.S. at 478; *Coudon v. Duffy*, 446 F.3d 483, 499 (3d Cir. 2006) (finding that "the United States is not liable under the FTCA for money damages for suits arising out of constitutional violations"); *see also* 28 U.S.C. § 2679(b)(2)(A) (FTCA's exclusive remedy provision does not apply to suits "brought for a violation of the Constitution of the United States").

Liberally construing the Complaint, as this Court must, Jones alleges that Defendants retaliated against him for filing grievances and various motions in his criminal case, interfered with his access to standby counsel and the courts, and treated him differently than other inmates because of his charges. *See, e.g.,* Compl. at 7 ("[Jones] explained [to his unit counselor] what had happened with Ms. Evans and also explained to the counselor that he believed she was giving him a hard time due to her disliking Mr. Jones as a person."); *id.* at 8 ("Mr. Jones reminded [his counselor] of the contempt Ms. Evans held towards him and stated that he knew she was not going to make his copies."); *id.* at 9 (On April 5, 2022, Jones filled out a BP-8 administrative remedy form citing Ms. Evans' prejudicial treatment.); *id.* (On April 6, 2022, Jones filled out another BP-8 form claiming violations of federal regulations and his "6th Amendment right to an unhindered defense," as well as First Amendment right to access the courts.); *id.* at 13 (explaining Jones's need for copies so he could file a redacted version of his motion to dismiss the superseding indictment because he was actually innocent of the charges and he felt "it is very important that the public be able to view his motion highlighting the actions of the gov't in concert with alleged victims who have abused the legal process and is in line to receive substantial gov't funds due to being considered victims of human trafficking when in all reality they have lied to gain that status"); *id.* at 15 ("Staff do not respect the internal grievance system and openly retaliate against inmates who utilize the system."); *id.* ("And some

13

believe they are here to inflict pain and punishment on any who comes thru the door in hand cuffs.  I have been biased and stereotyped by several staff member[s] over the 3 years I've been here.  I have had a staff member say 'don't say nothing to me you're a sex trafficker.'"); *id.* at 16 (describing the how he was notified on April 19 of his suspension from the email system and that it was "clear retaliation"); *id.* at 17 (noting his upcoming sentencing date and that email was his primary means of communication with standby counsel); *id.* at 18 (noting that the exclusion from the email system was "[c]learly retaliation for me filing the motion for leave and funds for photocopies in my criminal case.  An arbitrary and capricious abuse of discretion and abuse of the legal process for seeking the courts attention to a matter."); *id.* at 19 (asserting that due to Defendant Justice's decision to exclude Jones from use of the email system, Jones "could not efficiently relay instructions to his standby counsel to bring certain discovery to his sentencing hearing that would have mitigated his sentence").  Consequently, Jones's claims as pled are not viable under the FTCA.  *See, e.g., Jordan v. Barves*, No. 24-0356, 2024 WL 1585939, at *5 (M.D. Pa. Apr. 11, 2024) (although plaintiff used the term "negligent" in his administrative FTCA filing, the allegations detailed in the Complaint, including an access-to-courts claim, are not state law tort actions against the federal government and are not cognizable as FTCA claims); *Dorsey v. Peter*, No. 19-0113, 2020 WL 881134, at *11 (M.D. Pa. Feb. 21, 2020) ("[A] retaliation claim is not viable under the FTCA, as the FTCA does not provide a remedy for constitutional torts.") (citing *F.D.I.C. v. Meyer*, 510 U. S. 471, 478 (1994); *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001)); *Thompson v. United States*, No. 14-0894, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015) (dismissing access to the courts claim because FTCA contains no waiver of immunity for federal constitutional violations).

As noted above, Jones has an active *Bivens* action wherein he is pursuing constitutional claims based on the same allegations.  Indeed, the initial Complaint submitted by Jones in Civil

14

Action No. 22-1744 is virtually identical to the Complaint submitted in the case at bar. He may not simply repackage alleged constitutional violations as negligence claims as a basis for proceeding under the FTCA. *See, e.g., Jordan*, 2024 WL 1585939, at *5 (dismissing complaint with prejudice and noting that the plaintiff's FTCA claims are "a mere recitation of his *Bivens* claims").

Furthermore, as noted by the Northeast Regional Office in its review of Jones's claim, Jones has not alleged a compensable injury. To the extent that his allegations could be construed as alleging emotional or psychological injury, such injury is precluded by the FTCA because Jones alleged no physical injury. "[A]s part of the Prison Litigation Reform Act [("PLRA"),] . . . section 1346(b)(2) of the FTCA precludes inmate tort actions against the United States for 'mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act,' 28 U.S.C. § 1346(b)(2)." *West v. United States*, 729 F. App'x 145, 148-49 (3d Cir. 2018) (*per curiam*). Similarly, § 1997e(e) of the PLRA, also restricts a prisoner's ability to recover compensatory damages for solely mental and emotional injuries. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner. . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."). More than a *de minimis* physical injury must be alleged as a predicate to allegations of mental or emotional injury. *See Mitchell v. Horn*, 318 F.3d 523, 533-36 (3d Cir. 2003). Thus, Jones's claims for any mental or psychological injury must be dismissed. *See, e.g., Williams v. Maynard*, No. 23-1320, 2023 WL 3674332, at *4 (E.D. Pa. May 25, 2023) (dismissing inmate's FTCA claim because, *inter alia*, he did not allege that he suffered a physical injury); *Bernier v. United States*, No. 3:20-CV-956, 2022 WL 568339, at *6 (M.D. Pa. Feb. 24, 2022) (dismissing FTCA claim where inmate did not allege that he suffered any physical injury, nor did he allege that he suffered more than a *de minimis* injury, resulting from the sanctions imposed by a BOP

15

employee); *Briggs v. Brockman*, No. 19-0319, 2021 WL 1212311, at *17 (M.D. Pa. Mar. 31, 2021) ("Thus, both the FTCA and the PLRA preclude a convicted felon's action for mental and emotional injuries without a showing of a prior physical injury.").

### IV.   CONCLUSION

For the reasons stated, the Court will dismiss Jones's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Jones's claims will be dismissed with prejudice because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). An appropriate Order follows.

                              **BY THE COURT:**

                              **/s/ Jeffrey L. Schmehl**
                              **JEFFREY L. SCHMEHL, J.**